**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **JASON SIMON**, individually, and on behalf of others similarly situated, | : : : | Case No: |
| | : | Hon. |
| Plaintiff, | : : | Mag. |
| v. | : : | CLASS AND COLLECTIVE ACTION |
| **THE TERMINIX INTERNATIONAL COMPANY LIMITED PARTNERSHIP**, | : : : | JURY DEMAND |
| Defendant. | : : | |

## COLLECTIVE/CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff, Jason Simon ("Plaintiff"), hereby brings this Collective/Class Action Complaint against Defendant, The Terminix International Company Limited Partnership ("Defendant"), and states as follows:

### INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and common law.

2.      Defendant is in the pest management business and, according to its Handbook, its "purpose is to improve the lives of others by protecting that which is most valuable – families, homes, businesses and the environment." Defendant claims to have the following vision: "[b]e the global leader in professional pest management by consistently delivering superior solutions that build unrivaled trust and value with [its] stakeholders."

1

3.     In providing the aforementioned services, Defendant employed hourly employees in remote call center settings across the United States. Defendant used a number of titles, including, but not limited to, Inside Sales Representative and Customer Service Representative, to refer to its hourly call center employees (collectively referred to herein as "Hourly Employees"). Defendant heavily relied on Hourly Employees to, among other things, receive and respond to calls from Defendant's customers, set up inspections, and sell Defendant's services.

4.     Defendant classified its Hourly Employees as non-exempt and tasked them with the primary job duty of providing customer service to Defendant's clients.

5.     Defendant employed Plaintiff as an Hourly Employee.

6.     The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's Hourly Employees, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[1]

7.     One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

8.     More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

---

[1]  *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf (last visited Aug. 21, 2023).

9.       Defendant violated the FLSA and common law by systematically failing to compensate its Hourly Employees for work tasks completed before and after their scheduled shifts and during their unpaid meal periods, when they were not logged into Defendant's timekeeping system, which resulted in Hourly Employees not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime, and in non-overtime workweeks for regular hours.

10.      More specifically, Defendant failed to compensate Hourly Employees for the substantial time they spent turning on and booting up their computer and computer systems prior to clocking in to Defendant's timekeeping system, and shutting down/logging out of various computer programs and software after they clocked out at the end of each day.

11.      Plaintiff seeks a declaration that his rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding him unpaid back wages, liquidated damages, attorneys' fees and costs to make him and the putative Collective and Class whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

12.      At the earliest time possible, Plaintiff will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

13.      This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

14.    Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

15.    Defendant' annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's Hourly Employees engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

16.    This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of his federal claims.

17.    This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Tennessee, employs individuals within the state of Tennessee, and maintains its principal place of business in the state of Tennessee.

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant employs Hourly Employees in this District, conducts business in this District, and a substantial portion of the events that give rise to Plaintiff's clams occurred in this District.

## **PARTIES**

19.     Plaintiff Jason Simon is a resident of Tyler, Texas and has worked remotely for Defendant as a non-exempt Hourly Employee from approximately February 2023 to the present. Defendant compensated Plaintiff through the payment of an hourly rate, most recently $15.00 per hour. Plaintiff Simon signed a consent to join this collective action, which is attached as **Exhibit A**.

20.     Additional Collective members were or are employed by Defendant as Hourly Employees during the past three years and their consent forms will also be filed in this case.

21.     Defendant Terminix International Company Limited Partnership is a Delaware limited partnership (File No. 2108721) headquartered in Memphis, Tennessee. In the state of Delaware, Defendant maintains a registered agent for service of process listed as The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

## GENERAL ALLEGATIONS

22.     Prior to hiring prospective Hourly Employees, Defendant provided them with a written offer setting forth the job requirements and rate of pay.

23.     Defendant maintained documents demonstrating the promised wage for each Hourly Employee including, but not limited to: offer letters, paystubs, and/or other payroll records.

24.     Plaintiff received an offer from Defendant to work as an Hourly Employee, and he accepted Defendant's offer with the understanding that his base hourly rate would be paid for all hours worked.

25.     Plaintiff performed under the contract with Defendant by carrying out his job duties and responsibilities. More specifically, Plaintiff delivered customer service to Defendant's clients over the phone, including, but not limited to, answering questions, scheduling inspections, and selling solutions to customer problems. To provide the aforementioned customer service, Plaintiff utilized Defendant's applications and systems to track all events and customer service information. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

26.     Defendant paid its Hourly Employees at varying hourly rates.

27.     Defendant's Hourly Employees, including Plaintiff, typically worked five days each week and up to, and on occasion more than, forty (40) hours per week.

28.    Defendant provided training to Hourly Employees, on, *inter alia*, how to carry out their day-to-day job duties, how to track their time, how to load and log into their computer programs at the beginning of the day and when returning from their meal periods and how to log out at the end of the day; attendance, schedule and call quality expectations; and Defendant's policies. The training that Defendant provided to all of its Hourly Employees was substantially, if not entirely, the same.

29.    At all relevant times, Defendant controlled Plaintiff's and all other Hourly Employees' work schedules, duties, protocols, applications, assignments, and employment conditions.

30.    Defendant required Plaintiff and all other Hourly Employees to use a computer and a variety of essential and indispensable computer programs, applications, and servers in order to perform their job duties.

31.    Defendant instructed Plaintiff and other similarly situated Hourly Employees to be "call ready" the moment their scheduled shift started. This required Defendant's Hourly Employees to log into and load all of their essential work-related computer programs and applications prior to the start of their shifts so they could be prepared to take calls the moment their shift began. During the boot-up and login process, Defendant's Hourly Employees often experienced technical difficulties, increasing the amount of off-the-clock work they performed that day.

32.    Defendant enforced its "call ready" policy through its uniform compensation, timekeeping, and attendance procedures, the call quality assurance system it used to monitor and grade its Hourly Employees' calls and its internal job application process. More particularly, defendant utilized a quality assurance process through which it "monitor[ed] and approve[d] [the

Hourly Employees'] customer service skills." Defendant used the information obtained through its monitoring system for, among other things, "training, teammate performance evaluations, customer service improvement initiatives [and] accident investigations."

33.    Defendant also "encourage[d] [Hourly Employees] to seek opportunities to develop their careers by applying for job openings within the company" but in order to be considered for said position(s), Defendant required its Hourly Employees to "meet expectations or above" and prohibited them from having received "a final warning corrective action or a performance improvement plan in the past 12 months."

34.    Additionally, Defendant maintained schedule adherence and attendance metrics pursuant to which they monitored the Hourly Employees ' clock in times in relation to their start-of-shift time, as well as the time the Hourly Employees went into a "ready" status.

35.    Defendant also maintained an overtime policy that prohibited Hourly Employees from working overtime unless it was pre-approved.

36.    Defendant's policies, procedures, standards and processes necessarily required Hourly Employees to be logged into all computer programs, applications and systems at the time their scheduled shift started.

37.    All of Defendant's Hourly Employees used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the Hourly Employees' work and they could not perform their jobs without them.

38.    Defendant's Hourly Employees also performed off-the-clock work when they returned from lunch and prepared themselves to be call ready the moment their meal periods concluded.

39.     Similarly, Defendant's Hourly Employees, including Plaintiff, performed work off-the-clock at the end of their scheduled shift, after clocking out of Defendant's timekeeping system, and when they logged out of the programs and applications that they utilized during their shifts and shut down their computer.

40.     At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its Hourly Employees in order to pressure them into performing pre-, mid-, and post-shift work off-the-clock. More specifically, Defendant's Attendance Policy stated that Hourly Employees were "considered late if they report[ed] to work after the scheduled starting time" and considered an "early departure" to occur when Defendant's Hourly Employees left "before the scheduled end of their shift." The policy outlined a point system, pursuant to which Plaintiff and other similarly situated Hourly Employees would receive pre-determined point values for various incidents resulting in the following disciplinary action:

| Disciplinary Action: | Occurrence Count: |
|---|---|
| **Coaching Session:** Four occurrences in the same rolling six months | 4 |
| **Verbal Warning:** Five occurrences in the same rolling six months. | 5 |
| **Written Warning:** Six occurrences in the same rolling six months. | 6 |
| **Final Written Warning:** Seven occurrences in the same rolling six months. | 7 |
| **Termination:** Eight occurrences in the same rolling six months. | 8 |

41.     The pre-, mid-, and post-shift off-the-clock time Plaintiff and all other Hourly Employees spent booting-up/logging into and shutting down their computers and applications and programs directly benefitted Defendant and was integral and indispensable to the Hourly Employees ' job responsibilities.

42.     As a result of the pre-, mid-, and post-shift off-the-clock work described herein, Plaintiff and other Hourly Employees were unlawfully deprived of approximately sixteen (16) to thirty (30) minutes of compensation every shift.

8

43.    At all relevant times, Defendant was able to track the amount of time Plaintiff and other Hourly Employees spent in connection with the pre-, mid-, and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other Hourly Employees for the off-the-clock work they performed, thus breaching its agreements with its Hourly Employees.

44.    Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

45.    Despite knowing Plaintiff and all other Hourly Employees performed this pre-, mid-, and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

46.    Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other Hourly Employees booted-up and logged into their computers each shift, along with the time they logged into the timekeeping system.

47.    Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiff and all other Hourly Employees experienced technical issues.

48.    Because Defendant required its Hourly Employees, including Plaintiff, to perform pre-, mid-, and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time Hourly Employees spent working for Defendant. Thus, the hours reflected on the Hourly Employees' paystubs are also inaccurate representations of the hours they actually worked.

A.    **Pre-Shift Off-the-Clock Work**

49.    The off-the-clock pre-shift process took substantial time, approximately seven (7) to fifteen (15) minutes per shift. Specifically, before each shift Hourly Employees had to undertake

the following essential work tasks:

    a.  Turn on/wake up their computer;

    b.  Log into Microsoft Windows using a username and password;

    c.  Open Google Chrome;

    d.  Log into Workday using a username and password;

    e.  Log into Mission (Defendant's program containing, among other things, customer contact information) using a username and password;

    f.  Log into Workforce Management (the program Defendant used to track CSR availability) using a username and password and then via a dual authentication process through which Hourly Employees obtained a 6-digit code on their cell phone and entered it into their computer;

    g.  Log into Verint (Defendant's program highlighting, among other things, call availability, VPN information, and schedules) using a username and password;

    h.  Log into Google Chat using a pin browser;

    i.  Log into Microsoft Edge (Defendant's operating system Hourly Employees used to access the phone system);

    j.  Log into Five9, Defendant's phone system, using a username and password; and

    k.  Clock in and go into a "ready" status at the start of their scheduled shift.

50.    Defendant's Hourly Employees had to complete this process while off-the-clock, before the start of their scheduled shifts and before fielding calls. Consequently, the Hourly Employees had to begin working at least seven (7) to fifteen (15) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

51.    Defendant's Hourly Employees were not compensated for all of this time because Defendant prohibited its Hourly Employees from clocking into the timekeeping software before the start of their scheduled shift.

52.    The pre-shift off-the-clock work Hourly Employees performed directly benefitted

Defendant, and was integral and indispensable to their job duties and responsibilities as Hourly Employees.

**B.  Meal-Period Off-the-Clock Work**

53.    Defendant promised its Hourly Employees one unpaid 30-minute meal period each eight (8) hour shift.

54.    Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal period. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *underline completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

55.    Defendant did not provide Hourly Employees with legitimate bona fide meal periods because it required its Hourly Employees to return to their computer stations prior to the end of their unpaid meal periods to log back into programs that timed out while they were away from their computer and place themselves in a "ready" state so they could resume taking calls promptly at the end of their scheduled meal periods.

56.    The login process during meal periods was truncated because many of the programs remained opened; however, Hourly Employees spent approximately four (4) to five (5) minutes performing this work during their unpaid meal periods. Thus, Defendant maintained a common policy and plan pursuant to which it failed to pay Hourly Employees for no less than four (4) to five (5) minutes of work performed during their meal periods.

57.     The off-the-clock work Plaintiff and other Hourly Employees performed during their meal periods was compensable, directly benefitted Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the Hourly Employees' job duties and responsibilities.

58.     Defendant's management knew or should have known that Plaintiff and other Hourly Employees performed this off-the-clock work, but permitted and even rewarded it through Defendant's metrics, compensation and timekeeping policies, and schedule adherence requirements.

**C.  Post-Shift Off-the-Clock Work**

59.     Pursuant to Defendant's policies, training, and direction, Plaintiff and all other Hourly Employees were required to clock-out as soon as they were done fielding their last customer query for the day and *before* closing all work applications and systems they utilized in performing their job duties and shut down their computer. This resulted Plaintiff and other Hourly Employees performing an additional five (5) to ten (10) minutes of off-the-clock work every day.

60.     The post-shift off-the-clock work Plaintiff and other Hourly Employees performed was compensable, directly benefitted Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the Hourly Employees' job duties and responsibilities.

**D.  The Off-the-Clock Work Results in Viable "Gap Time" Claims**

61.     Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc*., 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *see also Conner v. Cleveland*

*Cty.*, *N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

62.    Plaintiff, and all similarly situated Hourly Employees, regularly worked non-overtime hours (i.e. "gap time") for which they were not paid.

63.    During the weeks that Hourly Employees did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight-time wages, in breach of Defendant's agreements with its Hourly Employees .

**E.  Plaintiff's Exemplary Workweeks**

64.    Defendant paid its Hourly Employees on a weekly basis. The FLSA and regular wage violations discussed herein occurred throughout Plaintiff's employment with Defendant; however, as an example of pay periods where Defendant failed to pay Plaintiff regular wages for work performed and overtime for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff can cite his paystubs for the pay periods of June 4, 2023 – June 10, 2023 and April 9, 2023 – April 15, 2023:

**June 4, 2023 – June 10, 2023 Paystub**

- Plaintiff worked less than 40 hours in one week at a rate of $15.00 per hour and upon information and belief was paid $15.00 for each regular hour worked.

- With pre-, mid-, and post-shift off-the-clock work, Plaintiff should have been paid an additional 16 to 30 minutes or more at his  regular  rate  of $15.00 for each regular hour worked.

**Exhibit B**, Simon June 4 - 10, 2023 Exemplary Paystub.

**April 9, 2023 – April 15, 2023 Paystub**

- Plaintiff worked more than 40 hours in one week at a rate of $15.00 per hour and upon information and belief was paid $22.51 per hour in overtime.

- With pre-, mid-, and post-shift off-the-clock work, Plaintiff should have

been paid an additional 16 to 30 minutes or more at his overtime rate of $22.51 for each hour worked in excess of 40 in the overtime workweek.

**Exhibit C**, Simon April 9 - 15, 2023 Exemplary Paystub.

## <u>COLLECTIVE ACTION ALLEGATIONS</u>

65.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of himself and on behalf of:

> *All current and former Hourly Employees who worked for Defendant at any time in the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

66.    Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

67.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

68.    Consistent with Defendant's policies and practices, Plaintiff and the proposed FLSA Collective were not paid for all straight and/or premium overtime compensation in workweeks during which they worked beyond forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

69.    All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

70.    Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime

premium for all hours worked in excess of forty (40) per workweek.

71.      As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a.  Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all regular hours they worked off-the-clock in non-overtime workweeks;

b.  Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all overtime gap time and premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and

c.  Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

72.      Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

73.      A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

74.      The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are: (1) required to work uncompensated boot up and log out time; and (2) entitled to their regular hourly wage, including a shift differential where applicable, in non-overtime

workweeks, overtime gap time in applicable weeks and overtime for hours worked over forty (40) in a week.

75.    Plaintiff estimates the FLSA Collective, including both current and former Hourly Employees over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

76.    The FLSA Collective should be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

77.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and on behalf of:

> *All current and former Hourly Employees who worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

78.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

79.    There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions

affecting individual members of the Rule 23 Nationwide Class. These common legal and factual

questions, include, but are not limited to, the following:

a.  Whether the pre- and mid- shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

b.  Whether the post-shift time Rule 23 Nationwide Class members spent closing all programs, applications and networks is compensable time under applicable law;

c.  Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

d.  Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

80.    Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that he and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and his legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

81.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

82.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

83.    This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

84.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

85.    Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I
FLSA COLLECTIVE ACTION
VIOLATION OF THE FAIR LABOR STANDARDS ACT,
29 U.S.C. § 201, *et seq.* -- FAILURE TO PAY OVERTIME**

86.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

87.    At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

88.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

89.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

90.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g)

of the FLSA.

91.    Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

92.    Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

93.    The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

94.    The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

95.    At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the proposed FLSA Collective members to perform pre-, mid-, and post-shift work off the clock, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

96.    The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective was an essential part of their jobs and these activities and the time associated with these activities was significant.

97.    In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when

considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including a shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff and the FLSA Collective's regular hourly rate.

98.     As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the FLSA.

99.     Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

100.    As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendant including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

## COUNT II
## RULE 23 NATIONWIDE CLASS ACTION
## BREACH OF CONTRACT

101.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

102.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

103.    Evidence of these contracts include Defendant's offer letters, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers

for payment at a specified, above minimum wage for Hourly Employee work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Class the promised wages.

104.    For example, Defendant offered to compensate Plaintiff at a minimum of $15.00 per hour if he agreed to perform services for Defendant as an Hourly Employee.

105.    Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, mid-, and post-shift work described herein.

106.    Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $15.00 per hour within the applicable period.

107.    By not paying Plaintiff and every other Rule 23 Nationwide Class member their fixed, pre-agreed upon hourly rate for *all* of the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

108.    Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

109.    Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them *more* than the federally mandated

21

minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

110.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

111.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

112.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

113.    This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

114.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendant's benefit.

115.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

116.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

117.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work

tasks at the request of and without objection by Defendant.

118.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

119.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

120.    Defendant was unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

121.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

122.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

a.    An Order designating this action as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and an order compelling Defendant to provide to Plaintiff a list of all FLSA Collective members who worked for Defendant at any time in the past three years. This list shall include the last known addresses, emails, and telephone number of each such person so that Plaintiff can give those individuals notice of this action and an opportunity to make an informed decision about whether to participate;

b.    An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

c.  An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts II and III);

d.  An Order designating Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

e.  An Order declaring Defendant violated the FLSA;

f.  An Order declaring Defendant's violations of the FLSA were willful;

g.  An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendant was unjustly enriched) by failing to pay them for mandatory pre-, mid-, and post-shift work activities described herein at a pre-established (contractual) regularly hourly rate;

h.  An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

i.  An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

j.  An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

k.  An Order awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff, Jason Simon, individually and on behalf of all others similarly situated, by and through his attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: August 24, 2023          Respectfully Submitted,

/s/ Joshua A. Frank
Joshua Frank (No. 33294)
David Garrison (No. 24968)
BARRETT JOHNSTON MARTIN & GARRISON,

PLLC
Philips Plaza
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615-244-2202
jfrank@barrettjohnston.com
dgarrison@barrettjohnston.com

Jesse L. Young
SOMMERS SCHWARTZ, P.C.
141 E. Michigan Ave., Ste. 600
Kalamazoo, Michigan 49007
Telephone: 269-250-7500
jyoung@sommerspc.com

Alana A. Karbal
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
akarbal@sommerspc.com

*Attorneys for Plaintiff and the
Putative Collective/Class Members*